HENDERSON *v*. BIELMAN.

1. NEW TRIAL—TRIAL.

   A motion for a new trial was properly denied, where counsel agreed with the court as to the issues to be presented to the jury, and none of the questions raised in said motion were then suggested nor later when the court asked for requests to charge.[1]

2. SALES—BREACH OF CONTRACT—WEIGHT OF EVIDENCE.

   In an action for money paid on the purchase price of an automobile, which was never delivered, where each party's claim that the other breached the contract was supported by testimony, and the issue was one of fact, which was properly submitted, a verdict for plaintiff cannot be said to be against the great weight of the evidence as a matter of law.[2]

3. SAME—TENDER—WAIVER.

   Testimony by plaintiff that when he asked for his automobile at the appointed time and informed defendants that he was ready to pay the balance due on it, and that they replied that they could not let him have it because they had not yet received it from the manufacturer, *held*, to show a waiver by defendants of a tender by plaintiff of the balance due.[3]

4. SAME—TENDER — CONDITION PRECEDENT—"FUTURE GOODS"—DELIVERY.

   Plaintiff's right of action was not barred under 3 Comp. Laws 1915, § 11832 *et seq.*, by his failure to tender the balance due, where his obligation, under the contract, was to "pay on delivery" on a fixed date, or accept delivery within ten days of the time specified, and no delivery was ever made or tendered.[4]

[1]New Trial, 29 Cyc. p. 794 (1926 Anno); [2]Sales, 35 Cyc. p. 611; [3]Id., 35 Cyc. p. 272; [4]Id., 35 Cyc. p. 606 (1926 Anno).

Error to Wayne; Webster (Arthur), J.   Submitted October 9, 1924.   (Docket No. 51.)   Decided April 3, 1925.

Assumpsit by Leslie T. Henderson against Alfred Bielman and Ray Bielman, copartners as Bielman Brothers, for breach of a contract for the sale of an automobile.   Judgment for plaintiff.   Defendants bring error.   Affirmed.

*Dwyer & MacPherson,* for appellants.

*Barbour & Martin,* for appellee.

STEERE, J.   In 1921 defendants were engaged as partners in the automobile business in Detroit, and sold Chevrolet automobiles.   Plaintiff was a physician practicing his profession in that city.   He owned a sedan (F. B.) automobile which he had purchased from defendants some time before and, on July 6, 1921, made a contract to buy from them a new Chevrolet coupé for September 1, 1921, delivery, turning in to them his used car at an agreed price of $1,300 to be credited on his purchase of the new coupé.   Defendants prepared and both parties signed an order memorandum of agreement which, so far as material here, is as follows:

"BIELMAN BROS.,
   "954 Mack avenue, July 6, 1921.
   "You are authorized to enter my order for Chevrolet F. B. 30 Coupé automobile.
   "To be delivered September 1, 1921.
   "Equipped as per current specifications with additional extras as listed below.   [Price of car........ freight charges...............   A stamp on it, all cars sold subject to price time of delivery, differential charges.]
   "Allowance on F. B. sedan, $1,300.
   "I agree to pay on delivery of above the balance of ..............and accept delivery of same within ten

days of time specified for delivery or forfeit amount paid on account without further obligation on the part of seller.

"Buyer's signature:   L. T. Henderson.

"Address:   Algonquin avenue.

"Dealer's signature, Bielman Bros.

"Salesman, N. E. Allor.

"All orders taken subject to delay by railroads, or by manufacturer, or other unavoidable delay beyond its control.

"This order not valid unless signed by one of the firm.

"Accepted by: Bielman Bros.
                              A."

The market price of Chevrolets to dealers for fall delivery was uncertain at that time and defendants left the balance to be paid blank for that reason.     Plaintiff testified he understood it would be approximately $300 more.     It is conceded that had the deal been carried through the balance to be paid by plaintiff for his new coupé would be $353.70.     The old car was turned in to defendants shortly after the contract was made and they soon sold it for $1,200.

Issues are raised by conflicting testimony of the respective parties as to what took place on and after September 1, 1921.     Plaintiff testified that defendants did not notify him they had the car he bought of them ready for delivery nor offer to deliver it on or after that date although he frequently called them up by telephone and went there to see about it without results, and, needing a car in his business, he finally bought one elsewhere, while defendants testified that they were ready and willing and offered to deliver him the new car according to contract on September 1st, and so notified him, but when they offered him the car ready for delivery he refused to receive it, claiming that he did not then have the money to pay the balance yet due upon it.

On that subject plaintiff testified under direct and cross-examination in part as follows:

"*Q.* How long did you continue to go there for this car?

"*A.* Oh, well, it was all of six months after the July date.

"*Q.* Six months after the July date.    Did they ever tender you a car in accordance with this order?

"*A.* They did not.

"*Q.* How much was this new Chevrolet car supposed to cost?

"*A.* Approximately about $300 more, I think it was $1,589 or $1,595, something like that.

"*Q.* Were you in a position to pay that money?

"*A.* Yes."

On cross-examination:

"*Q.* And didn't you refuse to take this car because you could not pay the $353.70?

"*A.* I never refused to take the car.

"*Q.* You have refused?

"*A.* I never did.    *    *    *    On September 1st I called Bielman Bros. up on the 'phone.    I didn't go to their place.    I talked with Al. Bielman.

"*Q.* Al. Bielman, and you told him then you had the money to pay the balance?

"*A.* I asked him for a car, yes.

"*Q.* Did you go over there personally?

"*A.* I did not.

"*Q.* Did you tell him you had the money ready to pay the balance on that day?

"*A.* Yes; sir.

"*Q.* Did you ever go to their place?

"*A.* Many times.    *    *    *

"*Q.* Do you mean to say Mr. Bielman refused you a coupé on September 1st?

"*A.* Absolutely.    Not only that. I have got a note in my possession.

"*Q.* Never mind, that is not in evidence now.    Now, as a matter of fact, Doctor Henderson, as a matter of fact, didn't you refuse to take the new coupé that they offered you on September 1st?

"*A.* I think I have answered that before.    I told you I never refused to take the car.

"*Q.* As a matter of fact after you had refused didn't they tell you that they would sell you a car on credit if you could not pay the difference, and allow you $1,300?

"*A.* No, sir.

"*Q.* But if you would not do that, they would have to charge you $106 more for insurance and interest?

"*A.* They did not.

"*Q.* And didn't you refuse to take this car?

"*A.* I did not.

"*Q.* Because of that additional $106 they would have to charge you?

"*A.* I did not."

Redirect-examination:

"*Q.* What talk did you have with Mr. Bielman on September 1st? Tell the jury.

"*A.* Called him up, asked him for a car and he put me off, said he would have it probably in about two weeks. Well, from that time on I believe I called him up every ten days, probably oftener than that, sometimes I would call him up every other day. It came on in January, we were giving a fair, and I told him, I said 'If you can't give me a big car I will take one of your small cars,' and he was going to give me a small car and $175 and was going to call it square. * * * Well, that was very fine, I said, 'If you will do that we will call it square.' I waited two weeks longer and called him up again and told him this fair was going on and I would have to have this car for a raffle. He told me at that time it was impossible for him to give me a small car."

Defendant Alfred Bielman testified in part:

"The new coupé arrived some time in the middle of July. We, Mr. Allor and I, went to see Dr. Henderson in regard to taking his car. Between that time and September 1st, I had conversations with Dr. Henderson over the 'phone.

"*Q.* Why did he not take this coupé?

"*The Court:* That is, what conversation did he have?

"*A.* He told us that for financial reasons he could not take his car at this particular time. The price

of this coupé on July 15th was $1,653.70 and also on September 1, 1921. This left a balance of $353.70 for Dr. Henderson to pay in cash.

"*Q.* Did he ever offer you this $353.70 and demand his new car?

"*A.* No, sir.

"*Q.* He did not?

"*A.* No, sir. * * * I talked to the doctor at least a half-dozen times between July 15th and September 1st.

"*Q.* Did you talk to him on September 1st?

"*A.* Yes.

"*Q.* What conversation did you have on September 1st?

"*A.* Trying to induce Dr. Henderson to take his car.

"*Q.* Did you have the coupé then ready for him?

"*A.* Yes, sir.

"*Q.* What explanation did he make for not coming and taking the car?

"*A.* To the effect that he did not have the money at that time to pay the difference.

"*Q.* After September 1st did you still keep at him to fulfill his agreement?

"*A.* Yes, sir."

After it appeared that each claimed the other breached the contract the court suggested: "Let us find out what the issue is before we get into the argument." After some discussion of questions involved and an agreement between counsel as to amounts claimed under their respective theories, the court said, addressing plaintiff's counsel:

"I am going to decide as a matter of law that if your client breached the contract, then he is liable for these damages whatever they are. That is a question of fact. If, on the other hand, the defendants breached the contract then your client is entitled to $1,300 plus interest."

At suggestion of the court counsel then figured what the interest would be on it at 5 per cent. and agreed upon $152.50. The court then said:

"Now, then, if you will put on the record the figures

you agree upon, then the verdict will be narrowed down to a simple question as to which side breached the agreement.   *   *   *

"*Mr. M——:* The question as to even if we did breach the contract, we are still entitled to all our money because they sold this particular car.

"*The Court:* That is a question of law and I don't think you are entitled to a directed verdict.   *   *   * If the defendant breached it, then you are entitled to $1,300 plus interest.    What does that amount to?

"*Mr. M——:* $152.50.

"*The Court:* That is $1,452.50 if the defendant breached the agreement.    Now, then, if, on the other hand, the plaintiff breached the agreement—and I have overruled your motion for a directed verdict and given you an exception to that—then do you agree that the amount that he would have made is the amount they have figured there?

"*Mr. M——:* For the purpose of this record in submitting it to the jury, yes.   *   *   *

"*The Court:*   *   *   * If the plaintiff breached the agreement that the defendant is only liable to the plaintiff for the sum of what?

"*Mr. MacP——* (for defendants):   $1,085.75 plus $135.45 interest or a sum total of $1,229.20.    That is what we are willing to pay them right now."

Assuming that the parties had by their counsel in open court agreed upon the propositions contained in this discussion, the court after introductory matter said to the jury that the case turned upon the question of which one of the parties breached the agreement, which was an issue of fact for them to determine, and gave the usual instructions as to the burden of proof, preponderance of evidence, credibility of witnesses, etc., saying directly to the issue in part as follows:

"The parties have agreed that if the plaintiff is entitled to recover in this case then the plaintiff is entitled to recover a certain amount which represents the $1,300 of the allowance for the old car plus interest, and on that amount from September 1st, 1921, to date, is a total of $1,452.    They have also agreed

that if plaintiff breached the agreement, and Bielman Brothers were not at fault, then Bielman Brothers are only liable for the $1,300 less the amount of the profit which they would have made out of the deal plus the interest on the amount which they would be liable to the plaintiff for up to $1,229, and some odd cents."

Before charging the jury the court inquired if either counsel wished to present any requests to charge and both replied that they did not. The jury rendered a verdict in favor of plaintiff for $1,452.50 and judgment was entered thereon. A motion for a new trial was made for defendants, claiming amongst other things that the verdict was against the weight of evidence, which was denied.

In his reasons for denying the motion the court referred to the "colloquy between counsel and the court in the absence of the jury," from which we have quoted, and stated he understood the basis upon which he proposed to submit the case to the jury was satisfactory to defendants' counsel; that no requests were presented when asked for at the close of the testimony nor were any of the questions raised in the motion for a new trial then suggested; that in the court's opinion defendants had a fair trial and the errors claimed in the motion, if of any merit, were not prejudicial. In *Hartwig* v. *Kell,* 199 Mich. 603, 611, it is said of a somewhat analogous situation:

"The trial judge was quite right in saying when overruling the motion for a new trial:

" 'If more full or specific instructions upon any particular point was desired, it was the duty of defendant to frame and present a special request covering the point.' "

We are unable to find as a legal proposition that the verdict was against the great weight of evidence. The testimony was in direct conflict on a controlling issue of fact and the jury were the judges of the credibility of the witnesses. The probabilities from

side-lights in the case can be argued either way according to credit given the testimony as to the circumstances on which they are predicated.

Briefly stated, defendants claimed that they did get and have on hand the car plaintiff ordered for September 1st, and offered to deliver it to him on payment of the balance due but he refused to take it because he did not then have the money to make the final payment, and after reasonable time they sold it to others, while plaintiff claimed he asked them for the car on the day for delivery and told them he was prepared to pay the balance; that they said they had not yet received the car but expected it soon, after which he waited and unavailably asked them for it repeatedly; that if they did get the car from the manufacturer, to whom they had to pay cash, they sold it to someone else because they could get the full price, while they would have only received from him the small balance yet due. Those claims, for which there was sufficient direct or inferential support for argument, involved purely questions of fact for the jury.

An assignment of error particularly stressed for defendants is that there is no proof of tender of the unpaid balance by plaintiff and the court erred in not requiring such proof by him and "in requiring any performance by defendants before a tender by plaintiff."

It is true plaintiff made no formal tender of money counted out for the balance, but it is equally true defendants never made any direct formal tender of the car itself for delivery. According to the testimony of each the other in effect waived strict tender. Plaintiff's testimony is that when he asked for his car at the appointed time and told them he was ready to pay the balance due on it they replied that they could not let him have it because they had not yet received it

from the manufacturer.    They claim that when they offered to deliver the car to him at the appointed time he declined to receive it because he did not have the money to pay the balance.    Under those circumstances strict formal tender by either would be an idle ceremony which both waived.    This action is not for possession of or to enforce a lien on the car.    No car was ever delivered to plaintiff.    He has sued to recover the partial payment he made on a car which he contracted for and did not get through defendants' failure to furnish it to him.    They make claim of recoupment for loss of profit on the sale suffered through his failure to accept and pay for the car when offered him.    That amount is not in dispute; which first breached the contract is the controlling issue of fact left open in the case and was properly submitted to the jury.

It is urged for the defense that this was a conditional contract under our statute on "sales of goods" (3 Comp. Laws 1915, § 11832 *et seq.*) and it contains a condition precedent that plaintiff pay or tender the balance of the agreed price before defendants are "obliged to part with their goods."    This plain contract of sale is evidenced by an order, accepted by the vendor, for purchase of what the statute calls "future goods," which are described in the order but not yet acquired by the seller and obviously for future delivery.    Such orders necessarily contain mutual obligations, or conditions if that term is applicable, and require reciprocal action.    Here the time of delivery was fixed for the next move after plaintiff made partial payment.    His next obligation was to "pay on delivery" of the coupé the balance yet due, and to "accept delivery of the same within ten days of the time specified for delivery."    He certainly was not obliged to pay the balance for the car before defendant delivered or offered to deliver it to him.    The

order of duties between vendor and vendee stated in
the statute (3 Comp. Laws 1915, § 11872), as follows:

"It is the duty of the seller to deliver the goods, and
of the buyer to accept and pay for them in accordance
with the terms of the contract to sell or sale."

The case turned on these elementary principles of
law applied to the facts found by the jury from the
conflicting testimony, which was properly submitted
to them by the court with direct and plain instructions
as to the issues of fact it was their province to decide.

The judgment will stand affirmed.

McDONALD, C. J., and CLARK, BIRD, SHARPE, MOORE,
FELLOWS, and WIEST, JJ., concurred.